UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEO MCCLENT COTTLE,

    Petitioner,

v.

ROBERT VASHAW, *Warden*,

    Respondent.

Case No. 20-10052
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS [1]**

    In 2017, Leo McClent Cottle faced multiple criminal charges for taking part in a robbery of a home that led to the homeowner being hit in the head with a pistol and punched multiple times.

    Cottle's pretrial summary shows an early plea offer, which stated that the "[p]rosecutor will offer" a sentence "at the bottom of the guidelines range as correctly scored by the court." (ECF No. 8-7, PageID.221.) At the time of this early plea offer, however, the prosecution and the defense had different views of Cottle's guidelines range, with the prosecution anticipating a range of 171 to 285 months and the defense anticipating a range of 108 to 180 months. (*Id.*) Cottle did not accept this plea offer.

    Eventually, Cottle accepted a second plea offer and pled guilty to felony firearm and armed robbery, but the felony firearm conviction was dismissed at sentencing. (ECF No. 8-7, PageID.229; ECF No. 8-5, PageID.186.) The second plea offer provided that if the guidelines as scored by the court were at least 108 to 180 months, the

prosecutor would recommend a sentence within the guidelines as scored. (ECF No. 8-5, PageID.186.) The sentencing court ultimately found the guidelines range to be 108 to 180 months and imposed a minimum sentence[1] of 180 months. (ECF No. 8-6, PageID.187, 204–205.)

Cottle argues that his trial counsel was ineffective in explaining the first plea offer to him. Specifically, he argues that "[t]rial counsel failed to adequately, and effectively explain that she had calculated the guidelines correctly and that the offer actually meant the defendant would serve a minimum of 9-years' incarceration, as opposed to the risk of spending at least a minimum of 15-years' incarcerated, if he rejected the offer and failed to succeed a[t] trial." (ECF No. 1, PageID.26.)

Cottle raised this claim before the trial court in a motion to correct an invalid sentence, which was denied. (ECF No. 8-2; ECF No. 8-3, PageID.107.) He then asked for leave to file an appeal with the Michigan Court of Appeals, which was denied with a single sentence: "The Court orders that the delayed application for leave to appeal is DENIED for lack of merit in the grounds presented." *People v. Cottle*, No. 343141 (Mich. Ct. App. May 22, 2018) (available at ECF No. 8-7, PageID.208). Cottle did not fare any better with the Michigan Supreme Court. *People v. Cottle*, 503 Mich. 889 (Mich. 2018) (available at ECF No. 8-8).

---

[1] Michigan courts impose what is known as an "indeterminate sentence," which includes a minimum and a maximum sentence. The sentencing judge sets the minimum sentence and the legislature, through its statutory maximums, sets the maximum sentence. After an individual serves their minimum sentence, they are eligible to be reviewed by the parole board. *See Kitchen v. Whitmer*, — F. Supp. 3d —, 2022 WL 2898633, at *7 (E.D. Mich. July 21, 2022).

That brought Cottle to this Court, where he asks for a writ of habeas corpus on the same grounds. Because the state court's decision was neither contrary to clearly established federal law nor involved the unreasonable application of such law, the Court will deny Cottle's petition.

## I.

Before the Court considers the substance of Cottle's claim, a word on the standard.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). So to obtain relief in federal court, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. 86, 101 (2011). And a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). But if the state

courts did not adjudicate a claim "on the merits," "AEDPA . . . does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

Before proceeding, therefore, the Court must determine if the state courts adjudicated Cottle's claim on the merits. As described previously, the Michigan Court of Appeals issued a one-sentence denial of Cottle's application for leave to appeal the trial court's ruling on his motion to correct his sentence. (ECF No. 8-7, PageID.208.) It purports to be on the merits. (*Id.* (denying "the delayed application for leave to appeal . . . for lack of merit in the grounds presented").)

Supreme Court precedent is clear that such a denial should be presumed to be on the merits, and thus, AEDPA's deferential standard of review applies. *See Harrington*, 562 U.S. at 99 (considering a summary denial and holding that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary"). Though the Michigan Court of Appeals referenced a "delayed" application, there is no indication that its dismissal was procedural as it does not cite any court rules and the decision states that it is on the merits of "the grounds presented." (*See* ECF No. 8-7, PageID.208.)

So in considering Cottle's petition, the Court will focus on whether the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law[.]" *See* 28 U.S.C. § 2254. And because the Michigan Court of

4

Appeals did not provide reasons for its holding, the Court will "look through the unexplained decision" to the trial court's decision which "does provide a relevant rationale[.]" *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## II.

Now to the merits. Cottle claims that his trial counsel's ineffective explanation caused him to reject an initial plea offer which was more favorable than the plea offer that he eventually accepted. *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (recognizing a claim under *Strickland* for advising a client to reject a favorable plea offer, leading to a harsher sentence for the defendant). He claims that "had he taken the [first] offer, he would have received a minimum sentence of 108 months instead of 15 years." (ECF No. 1, PageID.23.) In other words, he claims ineffective assistance of counsel during the plea-bargaining process.

To prove this claim, Cottle must generally show that (1) counsel's performance was deficient, and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). In the context of plea bargaining, the prejudice prong is satisfied by showing that (1) "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court," (2) "the court would have accepted its terms," and (3) "the . . . sentence . . . under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164.

The state trial court denied Cottle's claim following oral argument, concluding that had Cottle accepted the initial plea offer, "he would have accepted one that was in fact in this Court's mind a gamble as it relates to the number of years he would have served." (ECF No. 8-3, PageID.105.) According to the trial court, Cottle would first "have to gamble" that the trial judge would have scored his guidelines range in his favor though one of the variables was contested. (*Id.*) And two, Cottle would have to gamble that the trial court would have followed the prosecutor's recommended sentence of the bottom of that range. (*Id.*) The trial court found that "perhaps because of all these unknown[s], defendant rejected this offer[.]" (*Id.*)

Specific to the *Strickland* test, the trial court found no support that Cottle's trial counsel was deficient in her explanation of the first offer. (*Id.* at PageID.106.) And it also found the prejudice prong was not met because Cottle could not show that "but for counsel's errors . . . he would have been guaranteed and would have received a minimum sentence of 9 years." (*Id.* at PageID.107.)

Cottle presents no basis to disrupt this decision.

## A.

Start with the first prong of the *Strickland* test. The state court's decision that trial counsel's performance was not constitutionally deficient is not contrary to, or an unreasonable application of, clearly established federal law. "Judicial scrutiny of counsel's performance must be highly deferential, since it is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence[.]" *Maslonka v. Hoffner*, 900 F.3d 269, 280 (6th Cir. 2018) (quoting

6

*Strickland*, 466 U.S. at 689). Thus, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

And here, there is nothing in the record indicating that trial counsel's explanation of the first plea offer was deficient. The trial court found that an evidentiary hearing was unnecessary, and Cottle did not offer an affidavit or any sworn testimony from himself or his trial counsel describing how the first plea offer was explained to him. *Cf. Pouncy v. Macauley*, 546 F. Supp. 3d 565, 598 (E.D. Mich. 2021) (considering a sworn affidavit submitted to the state courts from trial counsel explaining a mistake he made when explaining the plea offer to petitioner). And Cottle seemed to understand the terms of the first offer and the offer he accepted when he made his plea. Indeed, at no point before he was sentenced did Cottle indicate that he did not understand the terms of the first offer or the offer he was taking. He answered the sentencing court's questions coherently and without confusion. (*See* ECF No. 8-5, PageID.186–191.) Nor was Cottle entitled to an explanation that accepting the plea deal would have guaranteed him a nine-year minimum sentence. That was not the offer. So it was not unreasonable for the trial court to determine that there was nothing in the record which showed deficient performance.

But even considering Cottle's arguments as evidence of how his trial counsel failed to properly explain the first plea offer, Cottle cannot show any error in the state court's deficient performance finding. Cottle asserts that when trial counsel

presented the initial plea offer, she should have explained that she, not the prosecutor, had correctly calculated the guidelines. (ECF No. 9, PageID.320.) But this was not her decision to make. It was for the trial court, which did not determine the guidelines range until the date of sentencing. And the court was not bound to calculate the same range as either Cottle's counsel or the prosecutor. Cottle was certainly aware that his lawyer calculated a different range than the prosecutor. And he was aware the prosecutor did not believe the defense had properly scored the range. This was because a particular offense variable was contested by the parties and required briefing. (ECF No. 8-5, PageID.192.) While the sentencing court ultimately scored the offense variable in the way predicted by defense counsel, it was by no means a certainty at the time of the initial plea offer. This Court must judge counsel's performance "on the facts of the particular case, viewed as of the time of counsel's conduct." *Maslonka*, 900 F.3d at 280. So the Court cannot say that it was an unreasonable application of *Strickland* to find that counsel was not deficient in failing to tell Cottle that she calculated the guidelines range "correctly" when she could not make such a guarantee at the time.

And it also follows that Cottle's trial counsel was not deficient for failing to tell Cottle, "that the offer actually meant the defendant would serve a minimum of 9 years' incarceration" (ECF No. 9, PageID.320), as that was only true with the benefit of hindsight and with the sentencing court's cooperation. Given the outside factors that were beyond the knowledge of counsel, it was a reasonable application of *Strickland* to find that she did not perform deficiently.

8

## B.

Even assuming, in Cottle's favor, that counsel was deficient in her explanation of the first plea offer, Cottle fails to show a reasonable probability that he "would have accepted the earlier plea offer had he been afforded effective assistance of counsel." *See Maslonka*, 900 F.3d at 281 (quoting *Missouri v. Frye*, 566 U.S. 134, 147 (2012)).

There are many reasons that a defendant like Cottle might reject a plea offer and then accept what ultimately turns out to be a less favorable one. For starters, Cottle had to weigh the risk of accepting a plea bargain without knowing his guidelines range, which varied significantly based on how a particular variable was scored. Given the uncertainty, the initial plea offer provided only the possibility of a sentence recommendation of 108 months or 171 months depending on the court's calculation of the guidelines range and acceptance of the prosecutor's recommendation. (*See* ECF No. 8-7, PageID.221.) In other words, there were two risks in accepting the plea at that time: one, that the court would agree with the prosecutor's guidelines range of 171 to 285 months and two, that it would not agree to impose a minimum sentence at the bottom of that range. Indeed, the court ultimately imposed a minimum sentence at the top of the calculated guidelines range because "[t]he ability to engage in something this heinous at such a young age is disturbing to the Court, that this was nothing to you to just get a phone call from some people and then go in and take such a strong [role] in entering someone's home and terrifying them . . . it deserve[s] significant punishment[.]" (ECF No. 8-6, PageID.204); *see also McGowan v. Burt*, 788 F.3d 510, 518 (6th Cir. 2015) ("[T]he fact

9

that the minimum sentence ultimately imposed is at the high end of the actual minimum-sentence range strongly suggests the trial court would not have been willing to sentence McGowan in accordance with the parties' agreement."). So while it is true that a 171-month sentence was less than the 180-month sentence Cottle received, the same would obviously not have been true of a 285-month sentence.

Cottle responds that under Michigan law, if he had accepted the first plea, but the sentencing judge did not accept the prosecutor's recommendation, he would have been allowed to withdraw the plea. *See People v. Killebrew*, 330 N.W.2d 834 (1982). Even assuming that is true, it does not help Cottle show that the trial court was unreasonable in determining there was no prejudice. Though perhaps the option of being able to withdraw the plea if the judge rejected the recommendation would make it more likely that Cottle would have taken the first plea, it has no bearing on whether the sentencing court would have accepted the terms of the agreement. And it makes it less likely that Cottle would have ultimately received a shorter sentence if he had been advised to accept the first plea, as he may have withdrawn it if the sentencing court did not adopt the recommendation. *Maslonka*, 900 F.3d 269, 281 (6th Cir. 2018) ("[D]efendant must show that the outcome of the plea process would have been different with competent advice.").

Cottle also points out that he has been diagnosed with a learning disability and reads at a second-grade level. (ECF No. 1, PageID.26.) He says that not only did this make him more reliant on counsel to explain the plea terms, but it shows that had they been explained to him effectively, he would have accepted the first plea as

10

"[a]ny reasonable minded individual would rather accept a plea with a 9-year sentence as opposed to foregoing it for a harsher plea of 15-years." (ECF No. 1, PageID.26.) This description, though, misconstrues the choice Cottle actually faced.

Again, the first plea offer was for a recommendation by the prosecutor of a minimum sentence of either 108 or 171 months depending on the court's calculation of the guidelines range. The second offer was for a recommendation between 108 and 180 months. It was thus possible for Cottle to have received the same sentence under either deal—i.e., 108 or 171 months. In other words, nothing precluded the trial court from sentencing Cottle to 108 months under the plea deal he accepted.

In short, even with a competent explanation of the initial plea deal, it was not clear what the sentencing guidelines would be, which means that it was not a certainty that the prosecutor would have recommended a nine-year sentence—nor a certainty that the judge would accept it. *See Lafler*, 566 U.S. at 164 (finding that one factor in the prejudice analysis is whether "the court would have accepted [the plea's] terms"). Under the first deal, the judge still could have sentenced Cottle to 180 months. *See Leatherman v. Palmer*, 583 F. Supp. 2d 849, 854 (W.D. Mich. 2008) ("The [state] judge's role is limited to consideration of the bargain between the defendant and the prosecutor."). And ultimately, Cottle only received a "harsher" plea because the judge ultimately sentenced him at the top of the range (180 months) and not the bottom of the range (108 months), a choice she could have made under either offer.

\* \* \*

In sum, Cottle has not shown that the state court unreasonably applied *Strickland* or *Lafler* in finding that he had not shown a reasonable probability that the outcome of the proceedings would have been different had he received effective advice from trial counsel.

### III.

Thus, the Court DENIES Cottle's petition for a writ of habeas corpus. The Court will issue a separate order on the certificate of appealability and Cottle's request to appeal in forma pauperis. A separate judgment will also follow.

SO ORDERED.

Dated: March 8, 2023

                                          s/Laurie J. Michelson
                                          LAURIE J. MICHELSON
                                          UNITED STATES DISTRICT JUDGE